IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALBUQUERQUE PUBLIC SCHOOLS,

      Plaintiff,

v.                                                                                             CV 19-1126 KG/JHR

AGATHA COOPER and
MALCOLM COOPER, as parents of Student,

      Defendants,

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      Albuquerque Public Schools ("APS") filed a Complaint on December 3, 2019 pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, challenging as legally erroneous and unsupported by the evidence a portion of the findings and decision of a Special Education Hearing Officer for the State of New Mexico which was favorable to the Coopers' minor child ("student"). [*See* Doc. 1 in CV 19-1126 KG/JHR]. Agatha and Malcolm Cooper sued APS and the New Mexico Department of Education individually and on behalf of their son, J.N., a child with autism, who they allege was physically restrained multiple times while attending Albuquerque Public Schools during the 2017-18 and 2018-19 school years. [*See* Doc. 1 in CV 19-1141 SCY/SMV]. The Coopers have now settled with APS in the amount of $50,000 for J.N.'s personal physical injuries and $65,000 in attorney's fees and costs, and presently before the Court is Magistrate Judge Jerry H. Ritter's Proposed Findings and Recommended Disposition ("PFRD") recommending approval of the minor's settlement. Doc. 31. For the reasons discussed below, the Court approves the minor settlement and adopts Judge Ritter's recommendation that $2,400 of the settlement funds be applied as a one-time mortgage payment for J.N.'s family home and the remaining $47,600 be placed in a pooled trust administered by the Arc of New Mexico.

## BACKGROUND

On December 3, 2019, APS filed suit against the Coopers, challenging the IDEA administrative decision. *Albuquerque Public Schools v. Cooper*, No. 19-cv-1126 KG/JHR, Doc. 1 ("IDEA case"). The Coopers filed a separate action on December 4, 2019, against APS and NMPED, bringing claims for disability discrimination, negligence, and attorney's fees and costs under the Individuals with Disabilities Education Act ("IDEA"), as well as seeking a proposed class action for equitable and injunctive relief. *Cooper v. Board of Education of Albuquerque Public Schools*, No. 19-cv-1141 SCY/SMV, Doc. 1 ("damages case"). On September 1, 2020, the parties in the IDEA case informed the Court that they reached a settlement. [Doc. 17, CV 19-1126 KG/JHR]. Likewise, the parties in the damages case informed the Court that the settlement resolved the claims between Plaintiffs and APS.[1] [Doc. 45, CV 19-1141 SCY/SMV]. Because Plaintiffs and APS reached a global settlement involving both cases, the Court in both the damages case and the IDEA case referred this matter to Magistrate Judge Jerry Ritter to hold a single fairness hearing and issue a single PFRD as to whether to approve the parties' global settlement. [Doc. 49, CV 19-1126 KG/JHR; Doc. 25, CV 19-1141 SCY/SMV].

The Court in both cases appointed Gabrielle Valdez as the Guardian ad litem ("GAL"). [Doc. 50, CV 19-1126 KG/JHR; Doc. 24, CV 19-1141 SCY/SMV]. She filed her GAL report on December 21, 2020, and a supplemental report on January 1, 2021, recommending approval of the settlement reached between Plaintiffs and APS and that J.N.'s money be placed in either a structured settlement annuity or a pooled trust through the Arc of New Mexico. [Docs. 59, 60, CV

---

[1] The settlement did not resolve Plaintiffs' claim against NMPED in the damages case. The Court, however, has dismissed that claim, finding that Plaintiffs failed to state a claim against NMPED. Docs. 51, 65.

19-1141 SCY/SMV]. Judge Ritter held a fairness hearing on January 7, 2021, discussing with the GAL, Ms. Cooper, and the attorneys for the Coopers and APS the fairness of the settlement, the $2,400 carve out, and whether to use a structured annuity or a pooled trust. [Doc. 29, CV 19-1126 KG/JHR; Doc. 61, CV 19-1141 SCY/SMV]. Judge Ritter issued a PFRD on February 10, 2021, agreeing with the GAL and recommending "the Court approve the settlement reached between the parties and order the placement of the funds secured for J.N.'s future benefit with the pooled trust administered by the Arc of New Mexico," and recommending "that $2,400.00 of the settlement funds be applied as a one-time payment on the mortgage to J.N.'s family home to prevent immediate disruption of J.N.'s routine and environment via threat of foreclosure." [Doc. 31, CV 19-1126 KG/JHR; Doc. 63, CV 19-1141 SCY/SMV]. APS filed objections on February 24, 2021, objecting only to the recommendation regarding the $2,400 for the mortgage payment. [Doc. 32, CV 19-1126 KG/JHR; Doc. 64, CV 19-1141 SCY/SMV].

## LEGAL STANDARD

Courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). When resolving objections to a magistrate judge's proposal, "[a] judge of the court shall make de novo determination of those portions of the report or specific proposed findings or recommendation to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P.

72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To that end, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

## ANALYSIS

As mentioned above, Judge Ritter recommends approving the minor's settlement ($50,000 for J.N.'s personal physical injuries and $65,000 in attorney's fees and costs) and placing the funds with the pooled trust administered by the Arc of New Mexico, secured for J.N.'s future benefit. APS does not object to this recommendation, and the Court, having reviewed the GAL report, fairness hearing transcript, and PFRD agrees with Judge Ritter that the proposed settlement, including placing fund in the pooled trust, is favorable and fair to the minor child J.N. according to the *Jones* factors. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1994) (directing trial courts to determine if a settlement is fair, reasonable, and adequate by considering "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable").

Judge Ritter also recommends allowing $2,400 of the $50,000 to be used as a one-time mortgage payment for J.N.'s family home. Ms. Cooper and her counsel explained at the fairness hearing that the Coopers are two months behind on their mortgage payment and would use that money to get caught up and avoid foreclosure. [Doc. 30 at 26:1-3, 37:2-12]. APS objects to this recommendation, and so the Court conducts a de novo review to determine if the $2,400 carve-out for the mortgage payment is in J.N.'s best interest.[2] *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (reiterating the "general duty of the court to protect the interests of infants . . . in cases before the court"); *Mares-Moreno v. Singh*, 278 F. Supp. 3d 1223, 1241 (D.N.M. 2017) ("In passing upon settlements dealing with claims or rights or minors, the court must determine whether the approval of a compromise would be in the best interest and welfare of the minor child." (quoting *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 30, 664 P.2d 1000)).

APS first argues that allowing the $2,400 carve out is an "improper revision of the terms of the Settlement Agreement." [Doc. 32, ¶ 10]. To that end, it argues that the parties reached a settlement for the benefit of J.N., and that "the use of payment to the mortgage company is not for the benefit of J.N. as his parents already have the obligation to provide shelter to J.N." *Id.* The Court agrees that the parents already have an obligation to provide shelter and other basic needs

---

[2] At the fairness hearing, counsel for Plaintiffs noted that the complaint brought claims on behalf of the Coopers, which could have generated a small settlement, such as the $2,400 now at issue for the mortgage payment. [Doc. 30 at 32:14-25 to 33:1-8]. However, counsel also pointed out that as part of the settlement, the Coopers signed a release giving up their claims. [Doc. 30 at 33:5-8; *see also* Doc. 32 ¶ 3 (APS's objections, asserting that "APS has not agreed to pay damages to Mr. and Mrs. Cooper and has agreed only to pay a sum for injuries allegedly sustained by J.N.")]. Accordingly, the entire settlement ($50,000) appears to be for the benefit of J.N. and the Court must, therefore, consider whether the $2,400 mortgage payment is for J.N.'s benefit.

for J.N. *See Britton v. Britton*, 1983-NMSC-084, ¶ 8, 671 P.2d 1135 ("In New Mexico, the duty of a parent to support a child continues until the child reaches the age of majority."). But, the Court also agrees with the GAL that allowing a small portion of the settlement proceeds to be used for a missed mortgage payment, and to avoid foreclosure of the family home, is in J.N.'s best interest. [*See* Doc. 30 at 26:15-24 (GAL stating at the fairness hearing that it would be in J.N.'s best interest for the mortgage to be paid)]. Ms. Cooper stated at the fairness hearing that J.N., who is currently nine years old, and his family have lived in their current home for seven years. [Doc. 30 at 37:21-25]. She explained that foreclosure on their family home would disrupt J.N.'s routine and be traumatizing for him, especially as a child with autism who thrives off routine. [Doc. 30 at 37:13-20].

APS cites *Hobbs ex rel. Hobbs v. Zenderman*, 542 F. Supp. 2d 1220 (D.N.M. 2008) to support its argument that the mortgage payment cannot come out of J.N.'s settlement benefits. [Doc. 32 at 4]. In *Hobbs*, a minor child received a large settlement following a personal injury and the money was placed in a special-needs trust in order to maintain the child's eligibility for Medicaid benefits. 542 F. Supp 2d. at 1221. The state sought to terminate the child's Medicaid benefits after it became concerned about expenditures from the trust funds, such as payment for a substantial portion of the family home. *Id.* at 1223. The specific issue before the court was "whether, when a special-needs trust exists and Medicaid eligibility is at stake, a state may examine the manner in which trust funds are being spent to determine whether the trust is being administered for the *sole benefit* of the Medicaid recipient/ trust beneficiary." *Id.* at 1223-24 (emphasis added). The court found that the state did have such authority, holding that "[i]f trust assets are used to directly benefit other individuals, such as members of the beneficiary's family,

6

the state has the authority to terminate the beneficiary's Medicaid eligibility and require the family to pay the beneficiary's medical expenses." *Id.* at 1233. The Court finds *Hobbs* inapplicable to the present case because, for one, Medicaid is not at issue here and the Court is hesitant to expand the *Hobbs* ruling beyond the narrow question of Medicaid eligibility it addressed. More importantly, the Coopers are not asserting that the $2,400 mortgage payment is for the sole benefit of J.N. Rather, they contend that it is in his best interest to use a small portion of the settlement to pay the mortgage and avoid foreclosure on his family home. The Court agrees.

APS also argues that allowing the $2,400 carve out "is inconsistent with the terms of the Settlement Agreement which provides that the Personal Injury Sum is to be paid on account of personal physical injuries under 26 U.S.C. § 104(a)(2) of the Internal Revenue Code." [Doc. 32, ¶ 7]. Contrary to this assertion, whether the money is used for the mortgage payment or placed entirely in a trust does not change the reason for the settlement. That is, APS agreed to pay J.N. $50,000 to settle his personal injury claims and such payment is exempt from gross income according to the tax code. *See* 26 U.S.C. § 104(a)(2). What J.N. then does with that money (put it in entirely in a trust or use part to pay the mortgage) does not change the reason (settlement of personal injury claims) that APS is paying J.N.

Lastly, APS asserts that the $2,400 will not actually benefit J.N. because the Coopers presented insufficient evidence to show that they will not miss payments in the future or that the payment is actually necessary to protect the house from foreclosure. [Doc. 32, ¶ 11]. The Court disagrees. Ms. Cooper and the GAL explained at the fairness hearing that the Coopers own a barbershop supply business which has been struggling due to shut-downs from the COVID-19 pandemic. [Doc. 30 at 39:4-9, 39:16-25]. Contrary to APS's concerns, Ms. Cooper explained that

she does not believe they will have future problems paying the mortgage because business is starting to turn around and because they down-sized their business. [Doc. 30 at 38:1-12, 39:16-25 to 40:1-6; 40:13-19]. The Court recognizes the challenges families face during COVID-19, challenges that would not normally exist, and agrees that using a small portion of the settlement funds to allow the Coopers to get caught up on their mortgage payments is in J.N.'s best interest.

## CONCLUSION

Following its *de novo* review, the Court agrees with the Judge Ritter's recommendations. Accordingly, the Court rules as follows:

1. The Proposed Findings and Recommended Disposition (Doc. 31) is adopted;

2. The Court approves the settlement between Plaintiffs and APS and orders payment of $65,000 in attorney's fees to Ms. Stewart, $2,400 to be applied as a one-time mortgage payment for J.N.'s family home,[3] and $47,600 invested with the pooled trust administered by the Arc of New Mexico for J.N.'s future benefit; and

3. The parties shall file closing documents within 60 days of the entry of this Order, or within 60 days of the entry of an order addressing the PFRD in Case No. 19-cv-1141, whichever is later, absent a showing of good cause for an extension.

_____
UNITED STATES DISTRICT JUDGE

---

[3] Judge Ritter notes in the PFRD that this settlement presents a unique case of settling two different cases presided over by two different judges. Doc. 31 at 11 n.5. The Court agrees, and notes that on March 17, 2021, Magistrate Judge Yarbrough approved the use of $2,400 for the mortgage payment.